BOLIN, Judge.
Helen Dietzel, individually and as the ■ mother and natural tutrix of the minor, Kenneth Gray, sued for damages resulting from an intersectional collision between a motorcycle operated by Gray and a truck driven by Howard Spence. Lester Dietzel, stepfather of Kenneth Gray, was also a plaintiff but has apparently abandoned his claim and has not appealed. Made defendants were Spence, Cotton’s Ouachita Bakery, Inc., employer of Spence and owner of the truck, and The United States Fidelity & Guaranty Company, insurer of Cotton.
In a written opinion the trial judge, without passing on the negligence of Spence, found Gray guilty of contributory negligence barring his recovery. From a formal judgment signed and filed pursuant to this opinion, Helen Dietzel appeals.
We conclude the accident was caused solely by the negligence of the truck driver, which requires reversal of the decision of the lower court and rendition of judgment in favor of plaintiff.
The issues are:
(1) Whose fault caused the accident?
(2) If the first question is to be resolved in favor of plaintiff, what should be the amount of the award ?
The accident occurred at the intersection of Hampton Street and Gordon Avenue in the City of Monroe, Louisiana. Both streets are hard-surfaced and are approximately 22 feet wide. Hampton runs generally east and west and Gordon north and south. Gordon is the superior street which is signified by a stop sign located on Hampton near its intersection with Gordon Avenue.
The accident occurred about 4:30 p. m., May 20, 1969. The day was clear and dry and visibility was good. The only eyewitnesses to the accident were the two drivers. Spence was operating a step-type van truck west on Hampton. He had traveled this same route many times, was familiar with the crossing and knew traffic on Gordon had the right-of-way. He testified he stopped his truck “two or three feet” back from the intersection and looked both ways to see if there was any traffic on Gordon Avenue. Observing no vehicles approaching, he started into Gordon and, after traveling only a few feet into the intersection, noticed a motorcycle approaching from his left about 75 feet away, proceeding north. He said he could not back up so he decided to try and make it across the intersection.
Kenneth Gray testified he was operating a 350 Honda motorcycle north on Gordon Avenue. He also was familiar with the intersection and knew he was traveling on a right-of-way street. He had entered Gordon only a few blocks back and had slowed his cycle in order to go over a railroad track. He said he was traveling about 25 miles per hour when he saw the bread truck stopped on Hampton near the intersection, on his right. He continued north on Gordon and when he was what he *355 estimated to be about 35 feet from the intersection, the truck suddenly appeared in his lane of travel. After seeing the truck he apparently experienced a blackout and remembers little thereafter about the accident.
A Monroe city police officer investigated the accident and found 52 feet 3 inches of skid marks left by the motorcycle. He said the skid marks were constant and slightly curved from right to left. The vehicles had not been moved when he reached the scene of the accident. The motorcycle was practically demolished from striking the bumper and left rear side of the van truck. As the cyclist was unconscious and badly injured, he was transported immediately by ambulance to the hospital and the police officer was unable to discuss the accident with him. The truck driver told the police officer the accident happened in the manner previously set forth. The truck driver testified his vision to his left on Gordon Avenue'was partially obstructed by a pine tree and some bushes near the intersection. However, the police officer contradicted this and was of the opinion a motorist in the position of the truck driver when he was stopped at the stop sign, had a clear vision of traffic approximately 350 feet south on Gordon Avenue.
On the question of fault, we find Howard Spence guilty of negligence, which negligence was a proximate cause of the accident. The law and jurisprudence of Louisiana impose a high degree of care upon the driver of a vehicle on an inferior street which has been so designated by a stop sign. The motorist is required to stop and to enter the superior street only after he has ascertained the crossing can be made in reasonable safety. In the instant case Spence, by his own testimony, failed to comply with the duty imposed upon him. Coming to a complete stop before entering the crossing was only part of the duty required of him. He testified he looked to his left. Whether he did or not is immaterial because he is charged with seeing what he should have seen and we are convinced there is no reason he should not have seen the motorcycle traveling north on Gordon Street. Additionally, by his own testimony he had observed the motorcycle when he had proceeded only two or three feet into the intersection. Had he immediately accorded the motorcycle the right-of-way there is little doubt the accident would have been averted.
The trial judge was of the opinion Kenneth Gray was guilty of negligence and that such negligence was a proximate cause of the accident. His reasons for this conclusion as set forth in his opinion were:
“It is apparent from the testimony that Kenneth Gray, the injured party, has little or no recollection of the accident, either prior to or at the time of impact. For example, he testified he was approximately thirty-three feet from the van truck when he first saw it, but the police officer measured the skid marks of the motorcycle to point of impact as fifty-two feet three inches. The length of these skid marks alone indicates that the motorcycle was traveling at a high rate of speed, due to the light weight of the cycle as compared to the average automobile.
“Then when we look at the photographs of the van truck showing the bumper and left rear side and the damage caused to it by the impact, the speed of the cycle must be fixed at a high rate.
“Again, we look at the photograph of the van full size and note it was not hard to see from a long distance. The plaintiff could not have been keeping a reasonable watch out ahead.
“The police officer testified that the accident occurred ‘a little to the west of the intersection’, which would place the rear end of the truck about half way across the intersection when it was hit by the motorcycle.
“The Court feels that this undisputed evidence clearly indicates that Kenneth *356 Gray, driver of the motorcycle, was guilty of negligence and that such negligence was a proximate cause of the accident.”
From the lower court’s opinion it is evident the finding of contributory negligence against Kenneth Gray was based almost exclusively upon the length of skid marks left by the motorcycle and the damage caused to the truck by the impact with the motorcycle. We are reluctant to reverse the factual findings of a trial judge, particularly if they are based upon the credibility of witnesses; however, there is no evidence in this case from any witness that Kenneth Gray was exceeding the speed limit. If we are to find him guilty of contributory negligence we must of necessity base it upon the skid marks and damage done to the truck, and such a finding is unwarranted and unjustified under all of the jurisprudence we have been able to find.
Stopping charts, skid marks, etc., are, at best, inconclusive as to speed. -Indeed, if they are to be accepted as evidence it should be with caution and only when supported by the testimony of competent experts regarding the conditions prevailing at the time they were made. No witness testified as to the relation of these matters in this case to the speed of the motorcycle. The police officer, who did not profess to be an expert, did say he was unable to estimate speed by the physical facts examined by him at the scene of the accident. If we disregard the skid marks and the severity of the impact between the motorcycle and the truck, there is no evidence that Gray was guilty of any negligence. He was proceeding on a superior street; he saw the truck stopped at the intersection and had every right, both logically and legally, to believe the truck would accord him the right to proceed through the intersection. While it is true young Gray must have been mistaken in saying that he first observed the truck entering his lane when he was only 35 feet away, because he left 52 feet 3 inches of skid marks, this is understandable in light of the fact that he was knocked unconscious by the collision.
On the question of quantum we think the trial judge briefly but accurately covered the injuries suffered by the motorcycle driver, as follows:
“Kenneth Gray sustained in the accident grave skeletal injuries which resulted in a slow and painful recovery and which left him partially disabled for life. The skeletal injuries consisted of:
(1) a comminuted fracture of the left femur;
(2) a compound comminuted fracture of the left patella;
(3) a transverse compound fracture . of the right patella, and
(4) a compound fracture of the distal radius and ulna of the right forearm.
“In addition to the above noted skeletal injuries, Kenneth Gray sustained a disfiguring laceration over the left eye. Kenneth Gray was hospitalized from May 20, 1969, until July 10, 1969, and during the first forty-two days of this hospital stay Kenneth was immobilized in traction. From July 1, 1969, until August 20, 1969, Kenneth was placed in a body cast which extended from above the waist to his feet. From May 20, 1969, until August 20, 1969, a period of 92 days, Kenneth, a seventeen-year-old boy, was confined totally to bed. From August 20, 1969, until October 10, 1969, Kenneth could get around only with the use of a full metal leg brace on his left leg and crutches. From October 10, 1969 until December 22, 1969, he was forced to continue to utilize a full leg brace which admitted of leg bending or the assumption of a seated position only *357 after mechanical adjustment. Dr. Cline, who treated Kenneth only for the right leg injury, estimated permanent disability at 15% for such extremity. Dr. Ledbet-ter, who treated Kenneth for all other injuries, assigned 20% permanent disability to the left leg, and 25% permanent disability to the right arm. Dr. Eugene Worthen noted that Kenneth has a 40 m.m. curvilinear scar and a 5 x 6 m. m. scar above the left eye, both of which scars have a dark blue cast. The elements of permanent disability include:
(1) permanent partial loss of flexion of the left knee amounting to 50° to 60° diminution in flexion;
(2) a shortening of the left leg by Yz inch;
(3) a permanent weakness of the left thigh muscle;
(4) patella crepitus, a grating sound in both knee caps;
(5) permanent diminution of strength and stability in the right arm estimated to constitute a disability of 25% of such extremity;
(6) disfiguring scars over the left eye which can be corrected by plastic surgery.
“The permanent nature of lingering leg muscle atrophy and tenderness of the knee caps was problematical. Chon-dromalacia, a softening of the articular cartilage of the knee caps, resulting in severe pain and limited mobility could not be ruled out in Kenneth’s case. In fact, Kenneth’s condition of patella cre-pitus was symptomatic of chondromala-cia.”
Thus, we have a young man, 19 years of age at the time of trial, who has been involved in a very serious accident. He was hospitalized for a lengthy period, underwent surgery on several occasions, suffered tremendously but fortunately will apparently be able to live a useful and almost normal life. However, he will have some of the disability and will be deprived of enjoying some of the things which we might call trivial, such as taking part in strenuous sporting events or wearing normal shoes. The facial scars can be somewhat mitigated by plastic surgery and those on his body are not disfiguring to any great extent, but they are there and will be there during his life. In fixing a proper award in personal injury cases there is no formula and every case must be decided upon its own facts. Taking all the evidence into consideration, we think an award of $35,000 for Kenneth’s personal injuries, which includes all of the elements of his physical condition, past, present and future; plus the special damages of $8,245.00 for medical bills which were stipulated or adequately proved; and $945.00 established as loss of wages, would compensate plaintiff and her son for their damages.
For the reasons assigned the judgment appealed from is reversed and it is now ordered, adjudged and decreed there be judgment against defendants, Howard Spence, Cotton’s Ouachita Bakery, and The United States Fidelity & Guaranty Company, in solido, and in favor of Helen Dietzel, individually in the amount of $9,190.00 and on behalf of her minor son, Kenneth Gray, in the amount of $35,000.00, with legal interest on the full amount from judicial demand until paid.
The expert witness fees of Drs. Frank X. Cline and Roy H. Ledbetter, Jr., are hereby fixed at $75.00 each.
Defendants are cast with all costs, including expert witness fees.